<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROMSPEN ROBBINSVILLE, LLC, | |
| Plaintiff, | Civil Action No. 20-3248 (MAS) (ZNQ) |
| v. | **MEMORANDUM OPINION** |
| TOWNSHIP OF ROBBINSVILLE, et al., | |
| Defendants. | |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon three Motions to Dismiss Plaintiff Romspen Robbinsville, LLC's ("Romspen") Complaint filed by Defendants Township of Robbinsville ("Township"), Robbinsville Township Planning Board ("Planning Board") (with the Township, (the "Township Defendants"), and Princeton Healthcare System d/b/a Penn Medicine Princeton Health ("PHS") (collectively, "Defendants"). (ECF Nos. 10, 11, 12.) Plaintiff opposed each Motion (ECF Nos. 16, 17, 18) and Defendants replied (ECF Nos. 21, 22, 23). Plaintiff also filed a Motion for Leave to File a Sur-Reply. (ECF No. 24.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, the Township Defendants' Motions are denied in part and granted in part, and PHS's Motion is granted.

I.    **BACKGROUND**[1]

In this action, Plaintiff alleges the Township Defendants have wrongfully deprived it of an opportunity to develop its property. Plaintiff owns a parcel of real property located within a redevelopment area in Robbinsville, New Jersey (the "Property"). PHS is the conditionally designated redeveloper of the redevelopment area. (Compl. *5, ¶ 5, ECF No. 1.)[2] Plaintiff is a mortgage originator that "funds the loans it makes with capital" it manages. (*Id.* at *9, ¶ 17.) Plaintiff is also an affiliate of Romspen Investment Corporation ("RIC"), another entity in the mortgage lending business. (*Id.* at *9, ¶ 16.)

A.    **Land Use Approvals**

In 2006, the Planning Board granted the Property's previous owner, Kings Interest, LLC ("Kings Interest"), Land Use Approvals for a proposed mixed-use development project consisting of three buildings that include apartment units, retail space, office space, and a restaurant with a bar (the "Project"). (*Id.* at *10, ¶ 20.) Shortly thereafter, Kings Interest postponed the Project due to the 2007-2008 financial crisis. (*Id.* at *11, ¶ 22.) Kings Interest "obtain[ed] extensions of the Land Use Approvals to permit construction of the Project if and when economic conditions improved." (*Id.* at *11, ¶ 23.)

B.    **Redevelopment Plan**

In October 2010, the Township adopted a resolution designating Town Center South as an "area in need of redevelopment" (the "TCS Redevelopment Area") pursuant to the Local

---

[1] For purposes of the instant Motions, the Court summarizes and accepts as true the factual allegations of the Complaint. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

[2] Paragraphs in the Complaint are incorrectly numbered. Therefore, when citing to the Complaint, the Court will refer to both the page and paragraph numbers. Page numbers preceded by an asterisk refer to the page number on the ECF header.

Redevelopment and Housing Law, N.J. Stat. Ann. § 40A:12A-1, *et seq.* ("LRHL"). (*Id.* at *11, ¶ 24.) The Township later approved a Redevelopment Plan for the TCS Redevelopment Area (the "TCS Redevelopment Plan"). (*Id.* at *12, ¶ 26.) "The TCS Redevelopment Plan prohibits the Planning Board from considering a development plan within the TCS Redevelopment Area unless and until the Township . . . approves 'the Project Concepts and Description of Project Elements.'" (*Id.* at *12, ¶ 27.) As to pre-approved projects, including Kings Interest's Project, the TCS Redevelopment Plan states in relevant part:

> [T]he Planning Board has approved several development applications for lands located in what is now the Redevelopment Area. Such Pre-Existing Approvals reflect development that is not consistent with the Goals & Objectives of this Redevelopment Plan, and may not be achievable in the current economic climate. As such, it is unlikely if they would be proposed and/or approved if proposed today ~ at least in their current form.
>
> While it is not within the Township's power to negate ~ or even compel modifications to ~ the approvals previously granted, the Township can ~ and does ~ encourage those entities who received Pre-Existing Approvals to explore new concepts and designs that would be consistent with this Redevelopment Plan, and to seek amendments to their current approvals accordingly.

(*Id.* at *12, ¶ 28; *see* TCS Redevelopment Plan *81, § 3.8, *82, § 3.8.3, *99, § 6.3, Ex. 2 to Compl.)

In September 2015, Kings Interest conveyed the Property along with the Land Use Approvals to Robbinsville Commons, LLC ("Robbinsville Commons"). (Compl. *13, ¶ 29.) That same month, "RIC made a [secured] loan . . . to [Robbinsville Commons] to fund elements of the development and construction of the Project." (*Id.* at *13, ¶¶ 15–16, 30.) Plaintiff alleges that RIC relied upon Section 6.3 and the Land Use Approvals in electing to loan the funds. (*Id.* at *14, ¶ 18.) According to Plaintiff, Section 6.3 "grandfathered" pre-approved projects and thus permitted the Project to "proceed without consideration of the TCS Redevelopment Plan[.]" (*Id.* at *12, ¶ 28.)

**C.      Plaintiff's Acquisition of the Property and Land Use Approvals**

Robbinsville Commons ultimately defaulted on the loan. (*Id.* at *14, ¶ 19.) "In partial resolution of RIC's claims against [Robbinsville Commons] arising from the [l]oan default, on or about March 16, 2018, [Plaintiff] (as the designee of RIC) took title to the Property, and also took an assignment of the Land Use Approvals." (*Id.* at *14, ¶ 20.) At the time of Plaintiff's acquisition, the Land Use Approvals were set to expire on June 30, 2018, pursuant to a resolution then-recently adopted by the Planning Board. (*Id.* at *14, ¶ 21.)[3]

**1.      Application to Extend Land Use Approvals**

On May 4, 2018, Plaintiff applied to the Planning Board for an extension of the Land Use Approvals. (*Id.* at *15, ¶ 23.) Sometime thereafter, the Township Defendants contacted Plaintiff to suggest that Plaintiff "amend its plans for the Project to bring them in line with the TCS Redevelopment Plan[.]" (*Id.* at *15, ¶ 24.) Plaintiff then had "multiple" in-person and telephonic discussions "with Township officials, including Mayor Dave Fried [('Mayor Fried')] and Director of Community Development Hal English [('Director English')]" concerning the Project. (*Id.* at *15, ¶ 25.) Plaintiff alleges that, "[d]uring the course of these discussions, the Township [D]efendants, and, in particular [Director] English and Mayor Fried, forcefully recommended . . . that [Plaintiff] withdraw [its] extension application, strongly implying that they would ensure that the Planning Board would not look favorably upon same[.]" (*Id.* at *15, ¶ 26.) According to Plaintiff, Director English and Mayor Fried "suggested" that Plaintiff instead proceed with an

---

[3] The resolution appears to have been adopted in February 2018. (*See* Resolution No. PB2018-08 *115.) Although the Complaint asserts that Robbinsville Commons owned the Property and Land Use Approvals at the time, the resolution states that Kings Interest owned the Property and applied for the extension. (*Id.* at *114–15.) In any event, Defendants do not dispute that Plaintiff is the owner of the Property. In addition, the resolution contains a provision that states the "[r]esolution is contingent upon the applicant providing . . . an updated traffic report" to "the Township [by] no later than September 30, 2018." (*Id.* at *115.) It is unclear whether this contingency was met.

4

amended site plan application "following additional discussions . . . designed to reach a consensus regarding the form the Project should take." (*Id.*) Plaintiff asserts that, based on these alleged discussions, it withdrew the extension application on July 19, 2018. (*Id.* at \*16, ¶ 30.)

### 2.    Amended Site Plan Application

During the next few months, Plaintiff and Township officials participated in a "series of meetings" in which Plaintiff accepted "suggestions" regarding modifications to the amended site plan application. (*Id.* at \*16, ¶ 31.) At Director English's prompting, Plaintiff also obtained a wetlands survey of the Property and provided a copy to the Township. (*Id.* at \*17, ¶¶ 33–34.)

Beginning in early 2019, Director English "became less responsive" but Plaintiff nevertheless "pushed forward with its development plans." (*Id.* at \*17–18, ¶¶ 35–36.) In February 2019, counsel for the Planning Board advised that Plaintiff may submit its amended site plan application directly to the Planning Board. (*Id.* at \*18, ¶ 37.) Around this time, a real estate broker approached Plaintiff on behalf of a developer that was interested in acquiring the Property. (*Id.* at \*18, ¶ 38.) The real estate broker also indicated that the developer had been working with PHS on a development project that included the Property. (*Id.*) Plaintiff alleges that although it "found [the real estate broker's] statements to be troubling[] and inconsistent with [its] months of discussions with the Township, Plaintiff[] advised that [it] had no objection to [the developer] making an offer." (*Id.* at \*18, ¶ 39.) Shortly thereafter, the real estate broker submitted an expression of interest offering \$1,046,000 for the Property, which had a market value of approximately \$6,400,000. (*Id.* at \*13, ¶ 31, \*18 ¶ 39.)

Around this time, in February 2019, the Township adopted a resolution designating PHS as a conditional redeveloper. (*Id.* at \*19, ¶ 40.) According to Plaintiff, it "generally [knew] that PHS and the Township were in discussions regarding the redevelopment of certain *adjacent* lands,

[but] the Township never stated that it was considering designating PHS as the redeveloper of [Plaintiff's] Property or the master redeveloper" for the TCS Redevelopment Area. (*Id.* at *19, ¶ 41.) Nevertheless, Plaintiff "accelerated its efforts to proceed with its Project." (*Id.* at *20, ¶ 47.)

On April 25, 2019, Plaintiff submitted an Amended Site Plan Application to the Planning Board. (*Id.* at *21, ¶ 48.) According to Plaintiff, the application "conform[ed] in all respects to the TCS Redevelopment Plan[.]" (*Id.* at *22, ¶ 52.) On May 6, 2019, Director English informed Plaintiff's counsel that the application would not be accepted or reviewed by the Planning Board because (1) the application was "deficient on its face as the approvals have expired" and (2) a Township ordinance "*contemplates* a master redeveloper for the redevelopment area." (*Id.* at *21, ¶ 50.)

In July 2019, Plaintiff received correspondence from an entity "claiming that it had been engaged by the Township to perform an appraisal of the Property for potential acquisition by the Township in the exercise of its power of eminent domain." (*Id.* at *22, ¶ 54.) That same month, the Township extended PHS's conditional designation as redeveloper. (*Id.* at *22–23, ¶ 55.) Plaintiff alleges that "[d]espite multiple . . . efforts to seek to have the Township reconsider its position, and allow Plaintiff to develop its own Property, the Township continues to fail and refuse to deal with Plaintiff[.]" (*Id.* at *22, ¶ 53.) Plaintiff claims it "has been placed in an indefinite limbo by the Defendants, whose actions have rendered the Property unusable." (*Id.* at *25, ¶ 63.)

### D.   Procedural History

On March 25, 2020, Plaintiff filed the present five-count action against Defendants asserting claims for: (1) violations of its substantive and procedural due process rights against the Township Defendants, (*id.* at *25–27, ¶¶ 54–59); (2) fraudulent inducement against the Township Defendants (*id.* at *28–30, ¶¶ 60–69); (3) tortious interference against PHS, (*id.* at *31–32, ¶¶ 60–

6

67); (4) estoppel against the Township, (*id.* at *33, ¶¶ 68–73.); and (5) governmental taking without just compensation, seeking $9,000,000, (*id.* at 34–35, ¶¶ 74–80). Defendants now move to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction and failure to state a claim.

## II.   LEGAL STANDARDS

### A.   Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). A plaintiff bears the burden of demonstrating that jurisdiction exists. *Id.*

Rule 12(b)(1)[4] allows a court to dismiss a complaint for lack of subject-matter jurisdiction. "A Rule 12(b)(1) motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* (citations omitted). On a factual attack, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdiction claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### B.   Pleading Standard

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and

---

[4] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). The "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

## III.    DISCUSSION

### A.    Township Defendants

#### 1.    Count One: Substantive and Procedural Due Process

Count One alleges the Township violated Plaintiff's substantive and procedural due process rights by arbitrarily and capriciously (1) adopting two resolutions that (i) designated PHS

8

as a conditional redeveloper and (ii) extended PHS's designation as redeveloper, and (2) refusing to consider Plaintiff's conforming Amended Site Plan Application. (Compl. *25–26, ¶¶ 55–57.)

In moving to dismiss Count One, the Township Defendants argue the Court lacks subject-matter jurisdiction because Plaintiff failed to timely avail itself of "constitutionally adequate judicial remedies." (Twp. Defs.' FMB 12–13, ECF No. 10-3.) The Township Defendants seem to argue that, for the same reason, Plaintiff's procedural due process claim fails. (*Id.* at 13–15.) As for the substantive due process claim, the Township Defendants contend that claim fails because Plaintiff's allegations "do not rise to the level of shocking the conscience." (*Id.* at 20.) The Court addresses each argument in turn.

### i.      Subject-Matter Jurisdiction

According to the Township Defendants, Plaintiff's failure to file an action in lieu of prerogative writs in state court strips the Court of subject-matter jurisdiction. (*Id.* at 17.) Although Count One is titled "Violations of Plaintiff's Rights to Substantive and Procedural Due Process" and cites the United States Constitution, (Compl. *23, *27, ¶ 58), the Township Defendants posit that the above-stated claims involve municipal land use decisions that "are wholly inappropriate for a federal court to consider." (Twp. Defs.' FMB 15).

The very cases cited by the Township Defendants, however, demonstrate that federal courts routinely consider challenges to municipal land use matters brought under the Due Process Clause of the Fourteenth Amendment. (*See, e.g., id.* at 13 (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 402 (3d Cir. 2003) (holding that the "shocks the conscience" standard is the applicable standard when reviewing non-legislative "substantive due process claims in land-use disputes.")).) And the fact that Plaintiff did not pursue an action in lieu of prerogative

writs[5] in state court does not, as the Township Defendants suggest, preclude Plaintiff from seeking to vindicate its due process rights in federal court. *See Johnson v. Paterson Hous. Auth.*, No. 17-7514, 2019 WL 1439118, at *4 (D.N.J. Apr. 1, 2019) (rejecting argument that a "[p]laintiff was required to file an action in lieu of prerogative writs in New Jersey state court before filing a federal cause of action, in federal court, for [the] [d]efendant's alleged unconstitutional taking of a federally created property right"). The Court, therefore, denies the Township Defendants' Motion to Dismiss Count One for lack of subject-matter jurisdiction over Plaintiff's due process claims.

### ii.     Procedural Due Process

Count One appears to challenge only the Township Defendants' alleged refusal to consider Plaintiff's Site Plan Application on procedural due process grounds. (Compl. *25–27, ¶¶ 55–59.) In moving to dismiss this claim, the Township Defendants argue that "New Jersey furnishes a constitutionally adequate procedural due process"—an action in lieu of prerogative writ—"that provides a reasonable remedy to correct a legal error by an administrative body." (Twp. Defs.' FMB 13–14.)

"Procedural due process claims face a two-part gateway inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *S. Allegheny Pittsburgh Rest. Enters., LLC v. City of Pittsburgh*, 806 F. App'x 134, 139 (2020) (internal quotation marks and citation omitted). "The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a

---

[5] An action in lieu of prerogative writs, a claim that may be filed in federal court despite the Township Defendants' suggestions to the contrary, "permits a 'court [to] set aside a municipal board decision if it is shown to be arbitrary, capricious or unreasonable, not supported in the evidence, or otherwise contrary to law.'" *See, e.g., Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 63 (3d Cir. 2013) (alteration in original) (quoting *Rivkin v. Dover Twp. Rent Leveling Bd.*, 671 A.2d 567, 581 (N.J. 1996)).

meaningful time and in a meaningful manner." *Id.* (citations omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Hickox v. Christie*, 205 F. Supp. 3d 579, 601 (D.N.J. 2016) (citation omitted).

Here, the Township Defendants do not dispute whether Plaintiff has a property interest protected by procedural due process. Rather, the Township Defendants maintain that an action in lieu of prerogative writs is an adequate remedy for challenging municipal land use decisions. (*See* Twp. Defs.' FMB 13–17.) But that argument misses the mark. As the Township Defendants note, an action in lieu of a prerogative writ must be filed no later than forty-five days after a determination or resolution is adopted reflecting the municipal agency's decision on a land use application. (*Id.* at 14 (citing. N.J. Ct. R. 4:69-6)); *see Cohen v. Thoft*, 845 A.2d 1281, 1284–85 (N.J. Super. Ct. App. Div. 2004) (explaining the procedure "for filing an action in lieu of prerogative writs to challenge the grant or denial of a land use application.") The Complaint alleges, however, that the Township Defendants refuse to consider Plaintiff's application, let alone render a final appealable decision. (Compl. *21, ¶ 50, *27, ¶ 59.) The Township Defendants do not appear to assert that they rendered a formal appealable decision on Plaintiff's application. Nor do the Township Defendants cite any state law that may have provided Plaintiff "a means of contesting an official's failure to act on the application." *See Halchak v. Dorrance Twp. Bd. of Supervisors*, No. 18-1285, 2019 WL 4795650, at *8 (M.D. Pa. Sept. 30, 2019) (denying motion to dismiss a procedural due process claim and finding that "[t]he effect of the withholding of a decision . . . is a legally significant fact because, without municipal authority's definitive position on whether an application is granted or denied, consideration of an aggrieved application's claim may ultimately be hindered or foreclosed."). On these facts, the Court finds that the Township Defendants fail to meet their burden of showing that Plaintiff has not stated a plausible procedural

due process claim and, accordingly, denies the Township Defendants' Motion to Dismiss this issue.

### iii.    Substantive Due Process

The Township Defendants argue that Plaintiff's substantive due process claim should be dismissed because the Complaint's allegations "do not rise to the level of shocking the conscience." (Twp. Dfs.' FMB 20.)

"Substantive due process is a component of the [Fourteenth Amendment] that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Newark Cab. Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) (alteration in original) (internal quotation marks and citation omitted). The Third Circuit has "recognized that two very different threads make up the fabric of substantive due process: substantive due process relating to legislative action and substantive due process relating to non-legislative action." *Id.* (internal quotation marks and citation omitted). To state a non-legislative substantive due process claim, a plaintiff must allege he has "a property interest protected by the substantive due process clause[,] and the government's deprivation of that protected interest shocks the conscience." *Joey's Auto Repair & Body Shop v. Fayette Cnty.*, 785 F. App'x 46, 49 (3d Cir. 2019) (alteration in original) (internal quotation marks and citation omitted).

"The 'shocks the conscience standard' encompasses 'only the most egregious official conduct.'" *Id.* (citing *United Artists*, 316 F.3d at 400). "This test is not precise, though it is intended to limit the involvement of federal courts in zoning disputes." *Id.* at 50 (citations omitted). "In the land-use context, [courts] look for evidence of corruption, self-dealing, intentional interference with constitutionally protected activity, virtual 'takings,' or bias against an ethnic group on the part of local officials." *Button v. Snelson*, 679 F. App'x 150, 154 (3d Cir. 2017) (citation omitted).

12

"Mere evidence of 'improper motives' is insufficient." *Locust Valley Golf Club, Inc. v. Upper Saucon Twp.*, 391 F. App'x 195, 199 (3d Cir. 2010) (citation omitted).

Here, the Complaint's allegations fall short of establishing a substantive due process claim. The Complaint alleges the Township Defendants "induced" Plaintiff to withdraw its application to extend the Land Use Approvals in order to "cause Plaintiff's entitlements to lapse [and thereby] allow PHS to control all projects in the redevelopment area[.]" (Compl. *4–5, ¶¶ 2–3.) The Complaint further alleges the Township Defendants now refuse to consider the Amended Site Plan Application that they "suggested" Plaintiff submit in accordance with the TCS Redevelopment Plan. (*Id.* at *15, ¶ 26.) Even accepting these allegations as true, they do not support a finding that the Township Defendants engaged in corruptive or self-dealing conduct that "shocks the conscious." For example, the Complaint does not allege the Township Defendants profited, or in any way benefitted, from seeking "to allow PHS to control" the redevelopment project. *See, e.g., Potter v. City of Chester*, No. 12-2058, 2012 WL 5464970, at *6 (E.D. Pa. Nov. 9, 2012) ("Even accepting as true that Defendants' purpose of driving Plaintiff out of business was to benefit an unnamed pizzeria, there are no factual averments that Defendants would have profited or benefitted personally. Such does not rise to a level of self-dealing that shocks the conscience, but rather, at most, such allegations point to an improper motive[.]"). The Court, therefore, grants the Township Defendants' Motion to Dismiss Plaintiff's substantive due process claim.

### 2.    Count Two: Fraud/Fraudulent Inducement

Rule 9(b) imposes a "heightened pleading standard [that] requires the plaintiff to state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 35 (D.N.J. 2020) (citation omitted); *see* Fed. R. Civ. P.

9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). In general, "the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Oring*, 441 F. Supp. 3d at 35 (internal quotation marks and citation omitted).

To state a claim for common-law fraud, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (citation omitted).

"[M]isrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." *Read v. Profeta*, 397 F. Supp. 3d 597, 635 (D.N.J. 2019) (citing *Banco Popular*, 876 A.2d at 635)). "An alleged misrepresentation must be premised upon an assertion that is not in accord with the facts." *Id.* (citation omitted). The assertion, however, "must relate to something that is a fact at the time the assertion is made in order to be a misrepresentation. Such facts include past events as well as present circumstances but do not include future events." *Id.* (citation omitted). "Indeed, in order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made." *Id.* (citation omitted).

Here, the Complaint fails to adequately allege a material misrepresentation of a presently existing or past fact. Instead, in a conclusory manner, the Complaint alleges that the Township Defendants "fraudulently induced" Plaintiff to withdraw its extension application by "forcefully recommend[ing]" that Plaintiff do so and "strongly implying that [they] would ensure the Planning Board would not look favorably upon [the extension application]." (Compl. *4, ¶ 2, *15, ¶ 26, *28–29, ¶ 64.) These allegations, however, do not contain any statements "relating to something

that [was] a fact at the time assertion was made[.]" *Read*, 397 F. Supp. 3d at 636 ("in order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made," (citation omitted)). Moreover, the Complaint's allegation that the Township Defendants "advised" they "would work with [Plaintiff] and look favorably upon an Amended Site Plan [A]pplication," (Compl. *15, ¶ 24), is not sufficient to constitute a misrepresentation. *Read*, 397 F. Supp. 3d at 635 ("the alleged misrepresentation cannot be predicated simply upon a promise to perform that subsequently is unfulfilled," (citation omitted)). Without more, the Complaint does not satisfy Rule (9)(b)'s heightened pleading standard and fails to state a claim for fraud.[6] The Court, accordingly, grants the Township Defendants' Motion to Dismiss Count Two.[7]

### 3.   Count Five: Takings Claim

Count Five asserts a claim for inverse condemnation seeking to recover $9,000,000 for the alleged taking of the Property. (Compl. *34–35, ¶¶ 74–80.) Count Five claims that the "Township Defendants' actions have the equivalent effect of a taking of the Property without just compensation." (*Id.* at *34, ¶ 79.) According to the Complaint, the Township Defendants' actions have "(1) severely limited Plaintiff's economically beneficial use of the Property, (2) deprived the Plaintiff of the productive use of its property interests, and (3) substantially destroyed the value of the Property." (*Id.* at *34, ¶ 78.)

---

[6] Notably, Plaintiff's Opposition Brief does not directly address its fraud claim, much less point to any alleged material misrepresentation of a presently existing or past fact.

[7] Count Four asserts a claim for estoppel. To the extent Plaintiff seeks equitable estoppel, the Court finds Plaintiff has sufficiently stated a claim. *See Davin, LLC v. Daham*, 329 N.J. Super. 54, 67 (N.J. Super Ct. App. Div. 2000) (noting that to state an equitable estoppel claim, a plaintiff must plead that "the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action" and that plaintiff relied on such conduct to his detriment."). The Court is mindful that "equitable estoppel is applied only in very compelling circumstances." *Id.* (citation omitted). But for purposes of a Rule 12(b) motion, Plaintiff has sufficiently stated a claim. The Court, accordingly, denies the Township Defendants' Motion to Dismiss Count Four.

The Township Defendants argue that Plaintiff's takings claim is not ripe for review because there is no "final determination regarding the redevelopment goals for Plaintiff's [P]roperty." (Defs.' Second Moving Br. 14, ECF No. 12-4.)

"[A] claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williams Cnty. Reg'l Plan. Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985) *rev'd on other grounds, Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2169 (2019) (noting that "the validity of this finality requirement . . . is not at issue here"). "This requirement informs the constitutional determination whether a regulation has deprived a landowner of all economically beneficial use of the property, . . . or defeated the reasonable investment-backed expectations of the landowner to the extent that a taking has occurred." *Brubaker v. E. Hempfield Twp.*, 234 F. App'x 32, 36 (3d Cir. 2007) (alteration in original) (internal quotation marks and citations omitted). Thus, the finality rule allows suit when a "decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury[.]" *Williams Cnty.*, 473 U.S. at 193.

Here, the Court finds that Plaintiff's takings claim is not ripe for review. Although the Township Defendants allegedly refuse to consider Plaintiff's application, the Complaint also seems to acknowledge that the Property is subject to the TCS Redevelopment Plan. (*See* Compl. *23–24, ¶¶ 55–63.) In that regard, the Complaint acknowledges that PHS has only been conditionally designated as the redeveloper for the TCS Redevelopment Plan and no redevelopment agreement has been finalized yet. (*Id.* at *22–23, ¶ 55, *24, ¶ 62.) Thus, there has been no final decision issued concerning the development plans for the Property. At this point,

therefore, Plaintiff has not suffered "an actual, concrete injury" for purposes of a takings claim. The Court, accordingly, grants the Township Defendants' Motion to Dismiss Count Five.

### B.   Count Three: Tortious Interference Claim Against PHS

PHS argues that Plaintiff's tortious interference claim should be dismissed because Plaintiff "cannot establish the essential elements of wrongful and intentional conduct, and a reasonable expectation and probability of realizing an economic advantage." (PHS's Moving Br. 20, ECF No. 11-1.)

To state a claim for tortious interference, a plaintiff must allege: (1) he had a reasonable expectation of economic benefit or advantage; (2) the defendant knew of that expectancy; (3) the defendant wrongfully and intentionally interfered with this expectancy; (4) a reasonable probability that but for the defendant's interference, he would have realized the economic benefit; and (5) he was injured as a result of the defendant's interference. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751–52 (1989)).

"The wrongful and intentional interference prong of the test requires [the] [p]laintiff to allege that the defendant acted with 'malice.'" *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, No. 10-453, 2010 WL 5239238, at *6 (D.N.J. Dec. 16, 2010) (citing *Printing Mart*, 116 N.J. at 756). "Malice is the intentional doing of a wrongful act without justification or excuse." *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp., Co.*, 912 F. Supp. 747, 772 (D.N.J. 1995) (internal quotation marks and citation omitted). Wrongful acts include "violence, fraud, intimidation, misrepresentation, criminal or civil threats, and/or violations of the law." *Coast to Coast Ent., LLC v. Coastal Amusements, Inc.*, No. 05-3977, 2005 WL 7979273, at *22 (D.N.J.

Nov. 7, 2005) (citing *EZ Sockets, Inc. v. Brighton-Best Socket Screw Mfg.*, 307 N.J. Super. 546, 559 (N.J. Super. Ct. App. Div. 1996)).

Here, the Complaint fails to adequately plead wrongful and intentional interference. The Complaint claims PHS took "purposeful action intended to harm Plaintiff by causing" the Township Defendants to engage in the alleged misconduct discussed above. (Compl. *31, ¶ 64.) But in doing so, the Complaint fails to identify what "purposeful action" PHS allegedly took. Instead, the Complaint focuses on pointing out that "Plaintiff is eminently more qualified and capable of developing the Project Property than PHS from both a financial standard . . . and an experiential standpoint[.]" (*See, e.g., id.* at *5, ¶ 4.) The Complaint also notes that PHS engaged in the unidentified "purposeful activity . . . for improper reasons that at present remain unclear (and may never reach the light of day)[.]" (*Id.* at *31–32, ¶ 64.) Even if the Complaint adequately pled wrongful and intentional interference, Plaintiff's tortious inference would still fail because the Complaint fails to allege that but for PHS's interference, the Township Defendants would not have engaged in the purported misconduct. Based on the foregoing, the Court grants PHS's Motion to Dismiss Count Three.

## IV.   CONCLUSION

For the foregoing reasons, the Township Defendants' Motion is denied in part and granted in part. PHS's Motion is granted. Plaintiff may file an amended complaint addressing the deficiencies identified herein. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE