**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**ROMSPEN ROBBINSVILLE, LLC,**

Plaintiff,

v.

**TOWNSHIP OF ROBBINSVILLE, *et. al.*,**

Defendants.

Civil Action No. 20-3248 (ZNQ) (LHG)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon two Motions to Dismiss ("the Motions")

filed by Defendants Township of Robbinsville and Robbinsville Planning Board ("Township

Defendants") and Defendant Princeton Healthcare Systems ("Defendant PHS") pursuant to Fed.

R. Civ. P. 12(b)(6). (ECF Nos. 28, 29, respectively.) Township Defendants filed a Brief in support

of their Motion. ("Township Moving Br.", ECF No. 28-2.) Defendant PHS filed a Memorandum

of Law in support of its Motion. ("PHS Moving Br.", ECF No. 29). Plaintiff opposed both

Motions. ("Opp'n to Township Br.", ECF No. 30; "Opp'n to PHS Br.", ECF No. 31.) Defendants

both filed replies. ("Township Reply Br.", ECF No. 32; "PHS Reply Br.", ECF No. 33.) The Court

has carefully considered the parties' submissions and decides the Motion without oral argument

pursuant to Federal Rule of Civil Procedure[1] 78 and Local Civil Rule 78.1. For the reasons set

---

[1] For the sake of brevity, all references herein to "Rule" will be to the Federal Rules of Civil Procedure.

forth below, the Court will GRANT Defendant PHS's Motion (ECF No. 29) and GRANT IN PART and DENY IN PART Township Defendants' Motion (ECF No. 28).

## I.   **FACTUAL BACKGROUND**[2]

In this action, Plaintiff is a New Jersey limited liability company with its principal place of business located in Toronto, Ontario, Canada. (Am. Compl. at *5, ¶ 7.)[3]  Plaintiff is an affiliate of Romspen Investment Corporation ("RIC"). (*Id*. at *7, ¶ 16.) RIC makes asset backed commercial loans throughout the United States and Canada. (*Id*.) Plaintiff funds the loans it makes with capital under its management and retains virtually all of its loans in its portfolio. (*Id*. at *8, ¶ 17.)

Defendant Township of Robbinsville is a municipal corporation of the State of New Jersey with its principal offices located in Robbinsville, NJ. (*Id*. at *5, ¶ 9.) Defendant Robbinsville Planning Board is a body corporate and politic of the State of New Jersey with its principal offices located in Robbinsville, NJ. (*Id*. at *6, ¶ 10.)

Defendant Princeton Healthcare System d/b/a Penn Medicine Princeton Health ("Defendant PHS") is a New Jersey non-profit corporation with its principal place of business located in Plainsboro, NJ. (*Id*. at *6, ¶ 11.)

Plaintiff filed this action in relation to a piece of land situated within the Township of Robbinsville ("the Property"). (*Id*. at *7, ¶15.)

In November of 2004, the Planning Board adopted a resolution granted Preliminary and Final Major Subdivision and Site Plan Approval for a proposed project on the Property to Kings Interests, LLC (the "Original Developer"). (*Id*. at *8, ¶ 20.) Then, in April of 2006, the Planning Board adopted a resolution granting Amended Preliminary and Final Site Plan approval (the

---

[2] For purposes of this motion, the Court will accept all facts alleged in the Amended Complaint ("Am. Compl.", ECF No. 27) as true. *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).
[3] Paragraphs in the Amended Complaint are incorrectly numbered, including various duplicate numbers. Therefore, when referring to the Amended Complaint, the Court will cite to both the relevant page and paragraph number.

"Amended Approval") for a project on the Property to the Original Developer which approved a plan permitting the development of the Property to include eighty-nine apartment units, 13,535 square feet of retail space, 13,535 square feet of office space, and a 6,000 square foot restaurant to be built within three buildings and in two phases (the "Project").  (*Id*. at *8–9, ¶ 21.)  Following the Original Developer's receipt of additional permits and approvals for the Project from other bodies of government (such permits and approvals and the Amended Approvals shall hereinafter be referred to as "Land Use Approvals"), the Original Developer and the Township entered into a Developer's Agreement dated March 8, 2007 with respect to the Project. ("Development Agreement").  (*Id*. at *9, ¶ 22.)

Due to the economic crisis in 2006, the Original Developer determined that the Project was not economically viable at that time.  (*Id*. at *9, ¶ 23.)  The Original Developer did not immediately proceed with construction of the Project but obtained an extension of the Land Use Approvals to permit construction of the Project if and when the economic conditions improved.  (*Id*. at *9, ¶ 24.)

On or about October 10, 2010, the Township adopted a resolution declaring the Town Center South Redevelopment Area ("TCS Redevelopment Area") an "area in need of redevelopment."  (*Id*. at * 9–10, ¶ 25.)  The Property is located within the TCS Redevelopment Area.  (*Id*. at *10, ¶ 26.)

On or about February 27, 2012, the Township approved a Redevelopment Plan for the TCS Redevelopment Area (the "TCS Redevelopment Plan").  The TCS Redevelopment Plan expressly acknowledges the existence of the Land Use Approvals for the Project and acknowledges pre-approved projects, such as the Project, as "grandfathered" and thus may proceed without consideration of the TCS Redevelopment Plan.  (*Id*. at *10, ¶ 29.)  Plaintiff indicates that Section

3

6.3 of the TCS Redevelopment Plan (attached as Exhibit 2 to the Amended Complaint) states the following, in relevant part:

> [T]he Planning Board has approved several development applications for lands located in what is now the [TCS] Redevelopment Area. Such Pre-Existing Approvals reflect development that is not consistent with the Goals & Objectives of this Redevelopment Plan, and may not be achievable in the current economic climate. As such, it is unlikely if they would be proposed and/or approved if proposed today at least in their current form.
> While it is not within the Township's power to negate or even compel modifications to approvals previously granted, the Township can ~ and does ~ encourage those entities who received Pre-Existing Approvals to explore new concepts and designs that would be consistent with this Redevelopment Plan, and to seek amendments to their current approvals accordingly.

(*Id*. at *10–11, ¶ 29.)

On or about September 22, 2015, the Original Developer conveyed the Property to Robbinsville Commons, LLC ("the Borrower") and assigned the Land Use Approvals to the Borrower.  (*Id*. at *11, ¶ 30.)  That same month, RIC made a loan ("the Loan") to the Borrower to fund elements of the development and construction of the Project.  (*Id*. at *11, ¶ 31.)  At the time RIC made the Loan, the Property was worth $6.4 Million.  (*Id*. at *11, ¶ 32.)  To secure the Loan, Borrower executed a first lien Open-Ended Mortgage on the Property in favor of RIC.  (*Id*. at *11, ¶ 15.)  The Loan was further secured by an assignment of licenses, permits, contracts, and other collateral given by the Borrower in favor of RIC (the "Assignment of Material Contracts"), which included the Land Use Approvals.  (*Id*. at *11–12, ¶ 16.)

Plaintiff alleges that at the time the Loan was made to the Borrower, "the Land Use Approvals remained in full force and effect and were grandfathered from compliance with the TCS Redevelopment Plan."  (*Id*. at *12, ¶ 17.)  RIC relied upon the continued existence of the Land Use Approvals and the grandfathering clause of the TCS Redevelopment Plan in electing to make

4

the Loan.  (*Id*. at *12, ¶ 19.)  The Borrower, however, ultimately defaulted on the Loan.  (*Id*. at *12, ¶ 20.)  In partial resolution of RIC's claims against the Borrower arising from the Loan default, Plaintiff, as the designee of RIC, took title to the Property and took assignment of the Land Use Approvals on March 16, 2018.  (*Id*. at *12, ¶ 21.)  At the time of this conveyance and assignment, the Land Use Approvals remained in full force and effect, but were set to expire, subject to further extension, on June 30, 2018.  (*Id*. at *12, ¶ 22.)

To recover the Loan principal and to deliver a return on its investors, Plaintiff engaged counsel to seek and obtain further extension of the Land Use Approvals.  (*Id*. at *13, ¶ 24.)  On or about May 4, 2018, Plaintiff applied to extend the Land Use Approvals to the Planning Board.  (*Id*. at *13, ¶ 25.)  Following submission of the extension application, Plaintiff received communications from the Township, advising Plaintiff to amend its plans for the Project to bring them in line with the TCS Redevelopment Plan.  (*Id*. at *13, ¶ 25.)  The Township also advised Plaintiff that Township Defendants would work with Plaintiff and look favorably upon an Amended Site Plan application modifying the Project plans to conform the same to the suggestions of the TCS Redevelopment Plan.  (*Id*.)

Plaintiff met with Township officials, including Mayor Dave Fried ("Mayor Fried") and Director of Community Development, Hal English ("Director English"), who forcefully recommended Plaintiff withdraw its extension application, implying that they would ensure the Planning Board would deny the application.  (*Id*. at *13–14, ¶ 27–28.)  Mayor Fried and Director English suggested Plaintiff instead proceed with an Amended Site Plan following additional discussions with the Township to reach a consensus regarding the form the Project should take.  (*Id*. at *14, ¶ 28.)

Mayor Fried exerts a strong influence and control over the Planning Board, controlling seven of its nine seats.  (*Id.* at *14, ¶ 31.)

Mayor Fried and Director English encouraged and instructed Plaintiff to prepare its Amended Site Plan to include a higher density of development.  (*Id.* at *15, ¶ 33.)  Mayor Fried advised that his administration would lend its support to such a plan before the Planning Board. (*Id.*)  Mayor Fried and Director English also advised that the Township wished to discuss and negotiate Plaintiff as a redeveloper and to enter into a redevelopment agreement with respect to the Project.  (*Id.* at *15, ¶ 34.)  In reliance on Mayor Fried's and Director English's statements, Plaintiff withdrew its extension application.  (*Id.* at *15, ¶ 36.)

A series of meetings were held between representatives of the Township and Plaintiff, where Plaintiff received favorable suggestions from the Township with respect to development of the Property.  (*Id.* at *16, ¶ 37.)  Based upon the favorable suggestions, Plaintiff prepared an Amended Preliminary and Final Site Plan Map, which was finalized as of March 29, 2019, which conformed to the Township's requests and the TCS Redevelopment Plan.  (*Id.* at *16, ¶ 38.) Around this time, Director English requested that Plaintiff commission a wetlands survey with respect to the Property to determine the full amount of developable lands.  (*Id.* at *16–17, ¶ 39.) Director English also asked Plaintiff to supply a copy to the Township, the costs for which would be reimbursed by the Township.  (*Id.*)

Thereafter, Plaintiff commissioned a wetlands survey and provided the Township a copy of the same.  (*Id.* at *17, ¶ 40).  However, the Township failed to reimburse Plaintiff for the substantial costs thereof.  (*Id.*)  In the interim, Director English became less responsive to Plaintiff and failed to follow through on assurances he had made to Plaintiff in previous meetings.  (*Id.* at

*17, ¶ 41.)  Plaintiff, however, pushed forward with its development plans, believing Director English's un-responsiveness to be innocent.  (*Id*. at *17, ¶ 42.)

In early February 2019, Plaintiff's counsel communicated with the Planning Board attorney, who confirmed that Plaintiff's proposed Amended Site Plan could be submitted and considered directly by the Planning Board without first submitting to the Township governing body.  (*Id*. at *17–18, ¶ 43.)  Around this time, a real estate broker on behalf of Trammel Crow Company ("Trammel Crow") approached Plaintiff, advising that it was interested in acquiring the Property.  (*Id*. at *18, ¶ 44.)  The broker claimed that Trammel Crow was working with Defendant PHS on a redevelopment project that included Plaintiff's Property.  (*Id*.)  While Plaintiff found these statements to be troubling, it did not object to Trammel Crow or PHS making an offer.  (*Id*. at *18, ¶ 45.)  Trammel Crow's/PHS's broker then submitted an "expression of interest" in purchasing the Property for $1,046,000.00, subject to numerous contingencies.  (*Id*. at *18, ¶ 46.)  Plaintiff rejected the offer.  (*Id*. at *18, ¶ 47.)

Plaintiff then learned that the Township had been in discussion with, and ultimately adopted a resolution conditionally designating, Defendant PHS as the redeveloper for a project on certain parcels within the TCS Redevelopment Area, which included Plaintiff's Property.  (*Id*. at *19, ¶ 48.)  Plaintiff indicates that although it was generally aware that Defendant PHS and the Township were in discussions regarding the potential redevelopment of certain adjacent parcels, the Township never disclosed to Plaintiff that it considered designating PHS as the redeveloper of Plaintiff's Property as well.  (*Id*. at *19, ¶ 49.)  Plaintiff alleges that upon information and belief, the Township's discussions with PHS regarding designating PHS as a redeveloper began prior to May 4, 2018.  (*Id*. at *19, ¶ 50.)  Plaintiff also alleges that upon information and belief, the Township provided Plaintiff's wetland survey to Defendant PHS to assist Defendant PHS in

forming its plans.  (Id. at *19, ¶ 51.)  PHS's conditional designation would expire as of August 13, 2019.  (*Id*. at *20, ¶ 55.)

Plaintiff therefore accelerated its efforts to proceed with its project.  (*Id*. at *20, ¶ 56.)  On or about April 25, 2019, Plaintiff submitted its Amended Preliminary and Final Site Plan application with the Planning Board, consistent with the guidance and confirmation received from the Planning Board's attorney and paid an application fee of $7,028.00 and placed into escrow with the Planning Board a sum of $52,706.00.  (*Id*. at *20–21, ¶57.)  The Planning Board accepted Plaintiff's application for filing.  (Id. at *21, ¶ 58).

Thereafter, Director English sent Plaintiff's counsel an email claiming that the application would not be accepted or reviewed due to the Land Use Approvals having expired.  (*Id*. at *21, ¶ 60.)  Plaintiff made multiple attempts to have the Township reconsider its position, but the Township refused to deal with Plaintiff in good faith.  (*Id*. at *22, ¶ 64.)

In July 2019, Plaintiff received a letter from Sockler Realty Services claiming that it had been engaged by the Township to perform an appraisal of the Property for potential acquisition by the Township in exercise of its power of eminent domain.  (*Id*. at *23–24, ¶ 65.)

On or about July 25, 2019, due to PHS's being unable to reach terms with a development partner, the Township, without reasonable or good faith basis to do so, extended PHS's conditional redeveloper designation for an additional year.  (*Id*. at *23, ¶ 66.)  Thereafter, Plaintiff, through counsel, sought to hold a meeting with the Township to find a reasonable resolution.  (*Id*. at *23, ¶ 67.)  While the Township initially agreed to hold such meeting, its attorney eventually indicated that the Township did not feel comfortable meeting with any property owners until working everything out with the redeveloper.  (*Id*. at *23, ¶ 68.)

8

Nearly 18 months later, there still was no redevelopment agreement in place.  (*Id.* at *24, ¶ 69.)  Plaintiff again reached out to the Township's counsel in March of 2020 to determine the status of Defendant PHS's proposed redevelopment project.  (*Id.* at *24, ¶ 71.)  The Township's counsel's response "evidenced that [Defendant PHS] had still not actually made any real progress towards redevelopment and was unlikely to do so for the foreseeable future."  (*Id.* at *24, ¶ 71.)  Plaintiff, however, was ready, willing, and able to complete the redevelopment project.  (*Id.* at *25, ¶ 75.)   In particular, counsel asserted Defendant PHS had not received sufficient board approval to negotiate with property owners, including Plaintiff.  (*Id.* at *24, ¶ 73.)  Plaintiff claims that Township Defendants and Defendant PHS did nothing to actually advance a redevelopment project, where Plaintiff could make no productive use of the Property. (*Id.* at * 25, ¶ 74.)  Plaintiff alleges that this is confirmed by the fact that the day before Defendant PHS's conditional designation was to expire, August 12, 2020, the Township adopted a resolution to continue to designate Defendant PHS as a conditional redeveloper of the Property and two adjacent parcels, and granting Defendant PHS 30 additional days of its conditional designation to permit it to finalize the project plans.  (*Id.* at *25–26, ¶ 76.)  The 30-day extension was subject to conditions to include that Defendant PHS negotiate with the owners of the parcels over which it was the conditional designated redeveloper to acquire their parcels.  (*Id.* at * 26, ¶ 77.)

On August 25, 2020, Plaintiff received a letter of intent from a broker directly on behalf of Defendant PHS, again offering to purchase the Property for the same figure Plaintiff had rejected one year earlier.  (*Id.* at *26, ¶ 79.)  Defendant PHS did not supply Plaintiff with a copy of the appraisal that was "apparently, obtained by the Township."  (*Id.* at *26, ¶ 80.)  Plaintiff again rejected the offer.  (*Id.* at *26, ¶ 81.)

On September 10, 2020, over Plaintiff's objection, the Township again extended Defendant PHS's conditional designation for an additional 60 days, conditioned upon Defendant PHS negotiating with the parcel owners.  (*Id*. at * 27, ¶ 83–84.)  Defendant PHS however did not have any communications thereafter with Plaintiff to satisfy this condition.  (*Id*. at *27, ¶ 85.)  The Township, nevertheless, again extended Defendant PHS's conditional designation through December 31, 2020.  (*Id*. at * 27, ¶ 88.)  The extension was again conditioned upon Defendant PHS to continue to engage in negotiations with impacted property owners.  (*Id*. at *28, ¶ 89.)  Defendant PHS again failed to communicate with any of Plaintiff's representatives.  (*Id*. at *28, ¶ 90.)

On December 29, 2020, the Township again extended Defendant PHS's conditional designation through March 31, 2021.  (*Id*. at *28, ¶ 91.)  To justify the continued extensions, the Township prepared detailed recitals.  (*Id*. at *28, ¶ 92.)  Plaintiff claims that two of the recitals are knowingly false.  (*Id*.)  Specifically, despite the fact that Defendant PHS failed to communicate with Plaintiff or other affected property owners since August of 2020, the recitals claim that Defendant PHS satisfied the continuing negotiation condition to justify the extensions.  (*Id*. at *29, ¶ 94.)  Due to these extensions, Plaintiff has been unable to make productive use of its real property for over two years.  (*Id*. at * 29, ¶ 95.)  Further, the Township indicated that Defendant PHS required a fifth extension of its conditional designation to conduct an environmental assessment of wetlands delineation.  (*Id*. at *29, ¶ 96.)  Plaintiff claims both these items are basic due diligence that "any competent developer would have completed at a very early stage of its efforts to develop a large project, not one that a competent developer would not have even started until two years into its development efforts."  (*Id*. at *29, ¶ 97.)

In March of 2019, however, Plaintiff commissioned a wetlands survey and provided the same to the Township, which the Township then provided to Defendant PHS.  (*Id*. at \*30, 99–100.)

As a result of these inconsistencies, counsel for Plaintiff wrote to the Township and demanded that because PHS failed to satisfy conditions to the extension, the same be immediately rescinded.  (*Id*. at \*30–31, ¶ 101.)  The Township has since held at least two council meetings but has "failed to heed this necessary demand."  (*Id*. at \*31, ¶ 102.)

## II.    **PROCEDURAL HISTORY**

On March 25, 2020, Plaintiff filed a Complaint against Township Defendants and Defendant PHS seeking mandatory injunctive relief to compel the Planning Board to grant final site plan approval with respect to the project and to compel the Township to issue building permits for the Project.  (Compl. ¶ 1.)  Plaintiff also sought monetary damages arising from Defendants' "malfeasance and/or misfeasance with respect to the Project."  (*Id*.)

Township Defendants and Defendant PHS filed motions to dismiss the complaint.  On February 28, 2021, the Court dismissed counts one, two, three, and five of the Complaint without prejudice.  (*See* ECF Nos. 25, 26.)   The Court granted Plaintiff leave to file an Amended Complaint.  (*See* ECF No. 25.)

On March 15, 2021, Plaintiff filed an Amended Complaint claiming Township Defendants violated Plaintiff's Procedural Due Process Rights (Count One), violated Plaintiff's Substantive Due Process Rights (Count Two), committed Fraudulent Inducement (Count Three), and Estoppel (Count Five).  The Amended Complaint also claims Tortious Interference with an Economic Advantage against Defendant PHS (Count Four).  The Amended Complaint raises an additional

11

claim in Count Six against Township Defendants, seeking declaratory relief pursuant to N.J.S.A. 40:55D-61.

## III.   LEGAL STANDARD

Upon reviewing a motion to dismiss, "[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992).  If the plaintiff is unable to plead sufficient facts to state a claim to relief that is plausible on its face, a motion to dismiss should be granted.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To determine whether a complaint is sufficient, a court must take three steps.  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id*. at 679.  Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  *Id*. at 679.  In sum, this court's inquiry is normally broken into three parts (1) identifying each element of the claim, (2) striking conclusory allegations, and (3) reviewing the components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.  *Malleus*, 641 F.3d at 563.

## IV.   DISCUSSION

### A. Township Defendants

#### 1.  Count One: Procedural Due Process

Count One alleges Township Defendants violated Plaintiff's procedural due process rights by arbitrarily and capriciously failing to consider its Amended Site Plan for the Project and

inducing and demanding that the Planning Board not accept or consider Plaintiff's Amended Site Plan.

Township Defendants argue that Plaintiff's claim for a procedural due process violation must fail because Plaintiff is required to follow the statutory process in place to seek a default approval based upon the Township's alleged failure to act. (*Id*. at 16.)  Specifically, Township Defendants assert that the procedure for claiming default approval is set forth in N.J.S.A. 40:55D-10.4 and Plaintiff failed to follow it. (*Id*.)

Township Defendants further argue contend that because Plaintiff's claim arises out of municipal land use decisions and there exists a constitutionally adequate statutory process to remedy that denial, the claim should not be considered by the Court. (*Id*. at 17.)  Finally, Township Defendants argue that the TCS Redevelopment Plan contemplates amendments to pre-existing approvals – not approvals that Plaintiff let lapse while creating a new plan.

Plaintiff argues that the Court has already ruled that it pled a viable cause of action for a violation of its procedural due process rights and estoppel. (Opp'n Br. to Township at 15.) Plaintiff argues that the Court should disregard Township Defendants' second attempt at dismissing these claims at the pleading stage.

In reply, Township Defendants reiterate that there has been no procedural due process violation. (Township Reply Br. at 1.)  Township Defendants argue that the five separate resolutions identified in Plaintiff's complaint could have been challenged via an action in lieu of prerogative writ, yet there is no allegation that this was ever done. (*Id*. at 2.) Township Defendants assert that the "very fact that [Plaintiff's] arguments are based on the alleged refusal of the Planning Board to consider the application quite clearly indicates that this is a land-use matter. (*Id*.)

Defendants argue that Plaintiff "sat on its hands" and avoided the statutory process to challenge an alleged deprivation of procedural due process. (*Id*.)

Generally, "[p]rocedural due process claims face a two-part gateway inquiry: (1) whether the plaintiff has a property interest protected by procedural due process, and (2) what procedures constitute due process of law." *S. Allegheny Pittsburgh Rest., Enters., LLC v. City of Pittsburgh*, 806 F. App'x 134, 139 (2020) (internal quotation marks and citations omitted). "The fundamental requirement of due process is the opportunity to be heard and it is an opportunity which must be granted at a meaningful time and a meaningful manner." *Id*. (citations omitted.) "Due process is flexible and calls for such procedural protections as the particular situation demands*." Hickox v. Christie*, 205 F. Supp. 3d 579, 601 (D.N.J. 2016) (citations omitted.)

In their Motion, Township Defendants do not dispute that Plaintiff maintains a property interest protected by procedural due process. Rather, they argue that Plaintiff failed to take advantage of the procedure set forth under New Jersey statutory law to appeal an administrative official. (Township Moving Br. at 17.) The Amended Complaint, however, alleges that Township Defendants refused to consider Plaintiff's application, let alone render a final appealable decision. (Am. Compl. at *21, ¶ 62.) In deciding Township Defendant's prior motion to dismiss, the Court held that Township Defendants "failed to cite to any state law that may have provided Plaintiff a means of contesting an official's failure to act on the application." *ECF No. 26* at 6 (internal quotation and citation omitted.)

Here, again, Township Defendants fail to cite any state law that may have provided Plaintiff with a procedure to contest an official's failure to act or consider its application. Accordingly, the Court finds that Township Defendants have not met their burden to show that

Plaintiff has not stated a plausible procedural due process claim.  Therefore, the Court will deny Township Defendant's Motion with respect to Count I.

### 2.  Count Two: Substantive Due Process

Count Two alleges Township Defendants violated Plaintiff's substantive due process rights by adopting five separate resolutions extending the conditional designation of Defendant PHS as the redeveloper of the Property, which "does not advance the common good."  (Am. Compl. at *34, ¶ 56).  While Defendant PHS failed to advance a redevelopment project, Plaintiff remains ready and willing to redevelop the Property in a manner consistent with the TCS Redevelopment Plan had Township Defendants not interfered with Plaintiff's ability to do so.  (*Id*. at *35, ¶ 56.)  As a result of Township Defendants' conduct, Plaintiff has been left without the ability to make any productive use of its property.  (*Id*. at *36, ¶ 60.)

Township Defendants argue that Plaintiff's claim of a violation of substantive due process fails as a matter of law and must be dismissed.  (Township Moving Br. at 20.)  Township Defendants argue that Plaintiff's allegations fail to assert "conscience shocking" conduct, as required to plead a substantive due process violation.  (*Id*. at 21.)  Further, Township Defendants argue that Plaintiff failed to identify behavior where Township Defendants conspired with Defendant PHS to harm Plaintiff.  (*Id*. at 23.)  Finally, Township Defendants argue that there has been no taking per the Fifth Amendment to the United States Constitution because the delay in development is a claim of lost economic opportunities.  (*Id*.)

Plaintiff insists that Count II sets forth a viable cause of action for a violation of substantive due process rights.  (Opp'n to Township Br. at 25.)  Plaintiff argues that it has alleged conduct equal to or greater than that which is required to satisfy the "shock the conscience" standard.  (*Id*.

at 28.)  Plaintiff argues that Township Defendants' actions constitute a "virtual taking."  (*Id*. at 30.)

In reply, Township Defendants reiterate that Plaintiff has failed to allege conscience-shocking conduct sufficient to assert a substantive due process claim.  (Township Reply Br. at 3.)  Township Defendants argue that Plaintiff's assertions ignore that there is a redevelopment plan in place which contemplates a "unified and homogenous plan to redevelop the area."  (*Id*. at 3–4.)  Further, Township Defendants argue that the United States Supreme Court has found that a 32-month moratorium on developing a comprehensive land use plan did not qualify as a Fifth Amendment taking.  (*Id*. at 4) (citing to *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302 (2002)).  Township Defendants contend that Plaintiff has only "tendered vague assertions of some alleged conspiracy via strained assertions and naked legal conclusions."  (*Id*. at 4–5.)

"Substantive due process is a component of the [Fourteenth Amendment] that protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them."  *Newark Cab. Ass'n v. City of Newark*, 901 F.3d 146, 155 (3d Cir. 2018) (alteration in original) (internal quotation marks and citation omitted).  The Third Circuit has "recognized that two very different threads make up the fabric of substantive due process: substantive due process relating to legislative action and substantive due process relating to non-legislative action."  *Id*. (internal quotation marks and citation omitted).  To state a non-legislative substantive due process claim, a plaintiff must allege he has "a property interest protected by the substantive due process clause[,] and the government's deprivation of that protected interest shocks the conscience."  *Joey's Auto Repair & Body Shop v. Fayette Cnty*., 785 F. App'x 46, 49 (3d Cir. 2019) (alteration in original) (internal quotation marks and citation omitted).  "The 'shocks the

16

conscience standard' encompasses 'only the most egregious official conduct.'" *Id*. (citing *United Artists Theatre Circuit, Inc. v. Township of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003)). "This test is not precise, though it is intended to limit the involvement of federal courts in zoning disputes." *Id*. at 50 (citations omitted). "In the land-use context, [courts] look for evidence of corruption, self-dealing, intentional interference with constitutionally protected activity, virtual 'takings,' or bias against an ethnic group on the part of local officials." *Button v. Snelson*, 679 F. App'x 150, 154 (3d Cir. 2017) (citation omitted). What is clear is that this test is designed to avoid converting federal courts into super zoning tribunals." *Eichenlaub v. Township of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). "Mere evidence of 'improper motives' is insufficient." *Locust Valley Golf Club, Inc. v. Upper Saucon Twp*., 391 F. App'x 195, 199 (3d Cir. 2010) (citation omitted).

Here, the Amended Complaint falls short of establishing a substantive due process claim. Plaintiff claims Director English and Mayor Fried induced it to withdraw its existing application to "cause Plaintiff's entitlements to lapse" and restrict Plaintiff from developing the Property, giving Defendant PHS control of all projects in the redevelopment area. (Am. Compl. at *3, ¶ 4.) The Amended Complaint further alleges the Township Defendants either conspired with Defendant PHS to misrepresent to the public that Defendant PHS satisfied the conditions for the five extensions for its conditional designation, or, Township Defendants "turned a blind eye" to Defendant PHS's failures which resulted in improper extensions of Defendant PHS's conditional designation. (*Id*. at *36, ¶ 62.) Even accepting these allegations as true, they do not support a finding that Township Defendants engaged in corruptive or self-dealing conduct that "shocked the conscience." In its decision denying Township Defendant's first motion to dismiss, the Court previously found that the Complaint failed to allege that "Township Defendants profited or in any way benefited from seeking to allow Defendant PHS to control the redevelopment project." (ECF

No. 26 at 7) (internal quotation and citation omitted). The Amended Complaint again fails to allege that Township Defendants benefited or profited from Defendants PHS's control of the Property.

Furthermore, Plaintiff's claim of "virtual taking" fails to meet the "shock the conscience" threshold.  Township Defendants have not seized Plaintiff's property, nor have they deprived Plaintiff of its beneficial use.  The delay in the Property's development is merely a claim of lost economic opportunities.  Further, the delays in the approval of their application do not constitute an "indefinite period" or a "significant amount of time. In fact, the Amended Complaint identifies two separate offers to buy the Property.  Accordingly, there has been no taking of the Property.

Accordingly, the Amended Complaint fails to plead sufficient facts sufficient to demonstrate that Township Defendants' conduct "shocked the conscience."  Count Two of the Amended Complaint will therefore be dismissed without prejudice.

### 3. Count Three: Fraud/Fraudulent Inducement

Rule 9(b) imposes a "heightened pleading standard [that] requires the plaintiff to state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 35 (D.N.J. 2020) (citation omitted); *see* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  In general, "the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Oring*, 441 F. Supp. 3d at 35 (internal quotation marks and citation omitted). To state a claim for common-law fraud, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity: (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and

18

(5) resulting damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 260 (N.J. 2005) (citation omitted).

"[M]isrepresentation and reliance are the hallmarks of any fraud claim, and a fraud cause of action fails without them." *Read v. Profeta*, 397 F. Supp. 3d 597, 635 (D.N.J. 2019) (citing Banco Popular, 876 A.2d at 635)). "An alleged misrepresentation must be premised upon an assertion that is not in accord with the facts." *Id*. (citation omitted). The assertion, however, "must relate to something that is a fact at the time the assertion is made in order to be a misrepresentation. Such facts include past events as well as present circumstances but do not include future events." *Id*. (citation omitted). "Indeed, in order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made." *Id*. (citation omitted).

The Court originally dismissed Plaintiff's fraudulent indument claim against Township Defendants without prejudice, finding that the Complaint failed to satisfy Rule 9(b)'s heightened pleading standard. (*See* ECF No. 26 at 15.) Township Defendants now argue that Plaintiff's fraudulent inducement claim in its Amended Complaint still fails to comply with Rule 9(b). (Township Moving Br. at 24.) Township Defendants argue that Plaintiff only offers conclusory terms that do not meet the heightened standard of Rule 9(b). (*Id*. at 25.) In opposition, Plaintiff argues that its Amended Complaint now more specifically pleads its fraud claim to highlight that such claim arises from Mayor Fried and Director English making promises with respect to Plaintiff's amended site plan. (Opp'n to Township Br. at 32.) Plaintiff argues that based on the timing of the negotiations with Defendant PHS, it is clear that Mayor Fried and Director English had no intention whatsoever of carrying out their many promises to Plaintiff. (*Id*.)

In reply, Township Defendants reiterate that Plaintiff's Amended Complaint fails to remedy the deficiencies regarding its fraudulent inducement claim. (Township Reply Br. at 5.)

Further, Township Defendants argue that Plaintiff makes no attempt to allege a date, time, place, or other attempt to inject precision into the vague allegations of fraud.  (*Id*. at 6.)

Here, Plaintiff claims that it was a fraudulently induced into withdrawing its application to extend the existing Land Use Approvals on the Property.  (Am. Compl. at* 21–22, ¶ 62.)  The Amended Complaint, however, fails to adequately allege a material misrepresentation of a presently existing or past fact.  Instead, the Amended Complaint merely alleges that Township Defendants made certain misrepresentations to Plaintiff and "fraudulently induced" it to withdraw its extension application by "forcefully recommend[ing]" that Plaintiff do so and strongly implying that the Planning Board would deny the extension application.  (Am. Compl. *45, ¶ 65, *14, ¶ 28– 29.)  Plaintiff claims that Mayor Fried and Director English's recommendation that Plaintiff withdraw its existing application was false when made, as it was clear that Township Defendants had no intention whatsoever to work cooperatively with Plaintiff.  (*Id*. at *42–43, ¶ 117.)  These allegations, however, do not contain any statements "relating to something that [was] a fact at the time assertion was made[.]" *Read*, 397 F. Supp. 3d at 636 ("[I]n order to constitute a fact, a statement's content must be susceptible of 'exact knowledge' at the time it is made.") (citation omitted).  The facts alleged here are merely speculative.  Further, the Amended Complaint's allegation that the Township Defendants "advised" they "would work with [Plaintiff] and look favorably upon an Amended Site Plan application," (Am. Compl. *13, ¶ 26), is not sufficient to constitute a misrepresentation.  *Read*, 397 F. Supp. 3d at 635 ("the alleged misrepresentation cannot be predicated simply upon a promise to perform that subsequently is unfulfilled.") (citation omitted).

When the Court granted Defendant's first Motion to Dismiss with respect to the fraud claim, it noted that the Complaint alleged merely conclusory facts to support its contention that

the Township Defendants fraudulently induced Plaintiff to withdraw its extension. (ECF No. 26 at 14). Like the initial pleading, the Amended Complaint again offers merely conclusory and speculative language to assert a fraud allegation. It does not satisfy Rule (9)(b)'s heightened pleading standard and fails to state a claim for fraud. Therefore, the Court will dismiss Count Three of the Amended Complaint without prejudice.

### 4. Count Five: Estoppel

Count Five of Plaintiff's Amended Complaint seeks equitable estoppel. As Plaintiff points out, the Court in its decision on Township Defendants' first Motion to Dismiss has already concluded that the Complaint sufficiently states a claim for estoppel. (*See* ECF No. 26 at 15 n.7.) Accordingly, the Court will deny Township Defendants' Motion to Dismiss with respect to Count Five.

### 5. Count Six: Declaratory Relief in Accordance with N.J.S.A. 40:55D-61

In Count Six, Plaintiff demands that the Court declare its Amended Site Plan be approved by Township Defendants. (Am. Compl. at *51, ¶ 80.)

Township Defendants argue that Plaintiff's request for declaratory relief must be denied because Plaintiff failed to comply with the statutory procedure to claim default approval. (Township Moving Br. at 29.) Township Defendants argue that should the Court grant Plaintiff's sought for declaratory relief, the Court would have to ignore the Municipal Land Use Law of New Jersey, the entirety of the TCS Redevelopment Plan, and the inaction on behalf of the Plaintiff. (Id.) Township Defendants argue that Plaintiff took no action regarding default approval and raises this claim for the first time in its Amended Complaint. (*Id.*)

Plaintiff argues that each of the elements of a claim made pursuant to N.J.S.A. 40:55D-61 have been satisfied. (Opp'n to Township Br. at 38.)

In reply, Township Defendant reiterate that Plaintiff failed to avail itself of the procedures available as set forth in N.J.S.A. 40:55D-10.4.  (Township Reply Br. at 7.)  Township Defendants argue that Plaintiff is aware that its application was not accepted nor deemed complete, and that the refusal to accept Plaintiff's Site Plan constitutes an administrative denial, which Plaintiff may appeal.  (*Id*. at 8.)

Plaintiff articulates eight separate assertions contained within the Amended Complaint to support its claim for declaratory relief in accordance with N.J.S.A. 40:55D-61.  (Opp'n Br. at 37–38.)  The sought for declaratory judgment parallels Plaintiff's procedural due process claim and seeks an injunction rather than damages. To the extent the Court has already found the procedural due process claim to survive the motion, the same seems to be true for the declaratory judgment count.  Defendants point out, however, that Plaintiff fails to cite any authority for this Court to grant the relief Plaintiff seeks.  A review of N.J.S.A. 40:55D-61 reveals that the statute does not necessarily permit this Court the authority to grant such declaratory relief.  Accordingly, the Court will dismiss Count Six without prejudice.

### B.    Defendant PHS: Count Four - Tortious Interference

Defendant PHS separately argues that the Amended Complaint fails to state a claim for tortious interference because (1) it cannot maintain a claim for tortious interference against a direct business competitor for loss of opportunity due to competition, (2) it fails to plead malice, and (3) it fails to allege a reasonable expectation of probability of an economic advantage.  (PHS Moving Br. at 18.)

Further, Defendant PHS argues that the tortious interference claim fails because it is shielded from liability by the *Noerr-Pennington* Doctrine[4].  (*Id*. at 30.)  Specifically, Defendant

---

[4] *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657 (1965)

PHS asserts that the Doctrine applies because Plaintiff's claim is premised on Defendant PHS's exercise of its First Amendment[5] right to petition a government body.  (*Id*. at 34.)

In opposition, Plaintiff argues that its Amended Complaint sets forth a facially plausible claim for tortious interference against Defendant PHS because it has pled facts that establish a reasonable expectation of an economic benefit. (*Id*. at 8.)  Plaintiff asserts that Defendant PHS "has self-servingly misconstrued" the nature of the Plaintiff's economic interest and Defendant PHS's interference therewith.  (*Id*. at 9.)  Further, Plaintiff maintains that it has sufficiently pled "malice."  (*Id*. at 11.)  Plaintiff asserts that it has alleged multiple misrepresentations made by Defendant PHS.

Finally, Plaintiff argues that the *Noerr-Pennington* doctrine does not immunize Defendant PHS its claim because it does not arise solely as a result of Defendant PHS lobbying the local government to be appointed as a redeveloper, or taking some other valid governmental action.  (*Id*. at 17.)  Rather, Plaintiff asserts that Defendant PHS colluded with Township Defendants to fraudulently induce Plaintiff to withdraw its extension application.  (*Id*.)

In reply, Defendant PHS reiterates that Plaintiff failed to plead malice and a reasonable expectation of an economic advantage.  (PHS Reply Br. at 1.)  Further, Defendant PHS argues that malice is not inferred when a defendant acts to advance its own interest and financial position.  (*Id*. at 3.)  Defendant PHS asserts that the Amended Complaint, even including what Plaintiff claims to be "multiple additional misrepresentations" by Defendant PHS does not come close to sufficiently pleading malice.  (*Id*. at 5.)

Generally, to state a claim for tortious interference, a plaintiff must allege: (1) he had a reasonable expectation of economic benefit or advantage; (2) the defendant knew of that

---

[5] U.S. Const. Amend. 1

expectancy; (3) the defendant wrongfully and intentionally interfered with this expectancy; (4) a reasonable probability that but for the defendant's interference, he would have realized the economic benefit; and (5) he was injured as a result of the defendant's interference. *Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751–52 (1989)).

"The wrongful and intentional interference prong of the test requires [the] [p]laintiff to allege that the defendant acted with 'malice.'" *Church & Dwight Co. v. SPD Swiss Precision Diagnostics. GmBH*, Civ. No. 10-453, 2010 WL 5239238, at *6 (D.N.J. Dec. 16, 2010) (citing *Printing Mart*, 116 N.J. at 756). "Malice is the intentional doing of a wrongful act without justification or excuse." *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp.*, Co., 912 F. Supp. 747, 772 (D.N.J. 1995) (internal quotation marks and citation omitted). Wrongful acts include "violence, fraud. intimidation, misrepresentation, criminal or civil threats, and/or violations of the law." *Coast to Coast Ent., LLC v. Coastal Amusements, Inc.*, Civ. No. 05-3977. 2005 WL 7979273, at *22 (D.N.J. Nov. 7, 2005) (citing *EZ Sockets, Inc. v. Brighton-Best Socket Screw Mfg.*, 307 N.J. Super. 546, 559 (App. Div. 1996)).

Here, the Amended Complaint claims Defendant PHS took "purposeful action intended to harm Plaintiff by misrepresenting to the Township its ability to carry out the project and/or its intention to develop such a project in a diligent manner." (Am. Compl. at *45, ¶ 64.) The Amended Complaint alleges that Defendant PHS misrepresented to Township Defendants that it continued to negotiate with Plaintiff and the other parcel owners to continue to extend its "conditional designation." (*Id*. at *46, ¶ 67.) Even if this is true, none of these actions were directed at Plaintiff; rather, the alleged misrepresentations were directed at Township Defendants. Accordingly, the alleged malicious conduct did not interfere with Plaintiff's economic expectancy.

Further, a tortious interference claim based on the loss of a business opportunity that is the result of competition is not cognizable.  *See Dashore v. Anderson*, Civ. No. 18-15554, 2019 WL 4727926, at *6 (D.N.J. Sep. 27, 2019) (dismissing a plaintiff's tortious interference claim on the basis that "[a]t best, the allegations show that Defendant, a competitor of Plaintiff, was engaged in competitive conduct when she commented on Defendant's practice, and competition, alone, is not sufficient to show malice.")  PHS is a direct business competitor with Plaintiff and both were pursuing a business opportunity with the Township of Robbinsville.  Accordingly, the Court finds that the Amended Complaint does not allege sufficient facts to support the required element of malice.  Given that its conclusion, the Court need not determine whether the *Noerr-Pennington* Doctrine applies.  The Court will grant PHS's Motion and dismiss Count Four without prejudice.

## V.    CONCLUSION

For the reasons stated above, the Court will GRANT Defendant PHS's Motion to Dismiss Count Four of the Amended Complaint.  The Court will GRANT IN PART and DENY IN PART Township Defendants' Motion.  Accordingly, the Court will dismiss Counts II, III, IV, and VI of the Amended Complaint without prejudice. The Court will also permit Plaintiff a final opportunity to plead its claims by granting leave to file a Second Amended Complaint within 30 days to cure the deficiencies addressed herein.  Given Plaintiff's two prior unsuccessful attempts, failure to remedy the defects identified by the Court herein may result in dismissal of its claims with prejudice.

Date: **November 28, 2022**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**